# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JOWANDA BROWN, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-07-334-SPS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER

The claimant Jowanda Brown requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for benefits under the Social Security Act. The claimant appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is REVERSED and REMANDED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and

work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) to two inquiries: first, whether the decision is supported by substantial evidence; and second, whether the correct legal standards were applied. *Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted]. The term substantial evidence means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). The Court may not re-weigh the evidence nor substitute its discretion for that of the agency. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into

---

[1] Step one requires the claimant to establish she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires the claimant to establish she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. *Id*. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If the claimant suffers from a listed impairment (or impairments "medically equivalent" to a listed impairment), she is determined to be disabled without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show she does not retain the residual functional capacity (RFC) to perform her past relevant work. The burden then shifts to the Commissioner to establish at step five that there is work she can perform existing in significant numbers in the national economy, taking into account the claimant's age, education, work experience and RFC. Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias* 933 F.2d at 800-801.

## Claimant's Background

The claimant was born on October 5, 1957, and was forty-nine years old at the time of the administrative hearing. She has a high school education and no past relevant work experience. She alleges she has been unable to work since birth, because of fatigue and weakness due to congenital heart disease and aortic stenosis.

## Procedural History

On January 24, 2005, the claimant filed an application for supplemental security income payments under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, which was denied.[2] ALJ Deborah L. Rose conducted a hearing and determined the claimant was not disabled on May 9, 2007. The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal. 20 C.F.R. § 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation. She determined that the claimant retained the residual functional capacity ("RFC") to lift and/or carry five

---

[2] The claimant filed three prior applications for supplemental security income payments between April 1991 and February 2003. The ALJ noted the claimant was beyond the two-year time period for reopening a prior application. *See Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990) (finding that the ALJ's decision not to reopen claimant's prior applications for benefits was discretionary and is not subject to judicial review under § 405(g)), *citing Califano v. Sanders*, 430 U.S. 99, 107-09 (1977).

pounds frequently and ten pounds occasionally; stand and/or walk up to two hours in an eight-hour workday; and sit for up to six hours in an eight-hour workday. The claimant could never climb ladders but could otherwise occasionally climb, balance, stoop, kneel, crouch, and crawl. She also was to avoid concentrated exposure to extreme heat and cold (Tr. 15). The ALJ concluded that the claimant was not disabled because there was work she could perform existing in significant numbers in the regional and national economies, *e. g.*, cashier/order clerk, bookkeeping/paramutual ticket checker, and fine assembler (Tr. 19).

**Review**

The claimant contends that the ALJ erred: (i) by failing to properly analyze the opinions of her treating physician Dr. Vivek Khetpal, M.D.; and (ii) by finding she had the RFC to perform substantial gainful activity. In her first argument, the claimant contends that the ALJ did not perform the required treating physician analysis and failed to address many of the opinions offered by Dr. Khetpal. The Court finds this argument persuasive.

The record reveals that the claimant began seeing Dr. Khetpal in December 2004. The claimant suffered from congenital aortic stenosis from birth, still lived with her parents, and had never worked because of fatigue and episodes of dizziness. She complained of shortness of breath with minimal activity and could not carry any more than ten to twelve pounds for the length of one block. She had undergone two aortic valvulotomy surgeries, one at five years of age and another when she was twelve. Dr. Khetpal performed an echocardiogram on the claimant and it "show[ed] EF of approximately 65 percent with moderate concentric left ventricular hypertrophy. There [was] minimal mitral valve thickening. Aortic valve

[was] thickened and ha[d] moderate to severe aortic regurgitation with velocities of 40 mmHg. There [was] moderate to severe aortic regurgitation. Mitral and tricuspid valves [were] within normal limits. There [was] mild tricuspid regurgitation with normal pulmonary pressures." Dr. Khetpal assessed the claimant with congenital aortic stenosis with aortic regurgitation and moderate aortic stenosis and recommended she be evaluated by a cardiothoracic surgeon and continue taking her medication Lanoxin. He suggested the claimant would not be able to work "based on her critical aortic stenosis with regurgitation." (Tr. 120-21). The claimant returned to see Dr. Khetpal in March 2005, reporting little change in her condition. The claimant was examined and assessed with "moderate aortic stenosis with moderate aortic regurgitation [and] status post aortic valvulectomy." She could not do strenuous work because of her condition (Tr. 118-19).

In April 2005, non-examining agency physician Lise Mungul, M.D., reviewed the claimant's medical records and concluded she had the RFC to lift and/or carry ten pounds occasionally and less than ten pounds frequently; stand and/or walk at least two hours in an eight-hour workday; and sit for six hours in an eight-hour workday. The claimant's postural limitations included never climbing ladders, ropes or scaffolds and only occasionally climbing ramps or stairs, balancing, stooping, kneeling, crouching, and crawling, and environmental restrictions included avoiding concentrated exposures to the extreme cold and heat (Tr. 107-14). When the claimant returned to see Dr. Khetpal in July 2005, she complained of fatigue and shortness of breath and dizziness when she walked. He assessed the claimant with "status post aortic valve replacement times two [and] history of

supraventricular tachycardia" and recommended further testing although the claimant's financial situation was limiting. He also suggested the claimant walk as much as she could but was "concerned that she [would] not be able to do much of the activities." (Tr. 116-17). Non-examining agency physician Luther Woodcock, M.D., reviewed the claimant's records in November 2005 and affirmed Dr. Mungul's April 2005 findings (Tr. 122).

When the claimant was seen again by Dr. Khetpal in December 2006, she described her health as declining. She suffered from dizziness when walking, decreased hearing, arthritis, palpitations, and unintentional weight loss. Her effect/demeanor was depressed. He assessed the claimant with "very symptomatic" aortic stenosis, progressive weight loss, atrial fibrillation, severe arthritis, hearing problems, mild depression and dyslipidemia. Dr. Khetpal recommended the claimant undergo testing and blood work but she was somewhat reluctant due to her financial situation. He noted the claimant could not lift more than ten to twelve pounds at any time or walk more than a few blocks (Tr. 127-28). Dr. Khetpal also completed a medical source statement for the claimant wherein he determined she could occasionally lift and/or carry less than ten pounds, stand and/or walk for a total of two hours, and sit for a total of three to four hours. The claimant's ability to push and/or pull with hand or foot controls was limited, she needed to lie down during the day to manage her symptoms, she could frequently balance but never climb, stoop, kneel, crouch, or crawl, and she had environmental restrictions because of weakness and dizziness. Dr. Khetpal's opinions did not include consideration of the claimant's pain, discomfort or other subjective complaints but were based on her aortic valve replacement in 1970 and irregular pulse (Tr. 124-25).

The ALJ discussed Dr. Khetpal's treatment notes and some of the limitations he assessed on the medical source statement. She specifically mentioned Dr. Khetpal's findings limiting "the claimant to standing/walking 2 hours and sitting 3 to 4 hours[, but] d[id] not find the sitting limits supported by his progress notes, so . . . d[id] not give his opinion great weight in that regard." She did, however, "accept the limitations in lifting, carrying, standing and walking as being consistent with the findings on physical examination." (Tr. 18).

There are several deficiencies in the ALJ's evaluation of Dr. Khetpal's opinions. First, although it seems clear that the ALJ did not entirely reject Dr. Khetpal's opinions, she did not perform a proper treating physician analysis. For example, she did not ascertain whether Dr. Khetpal's opinions were entitled to controlling weight, *i. e.*, if the opinions were "'well-supported by medically acceptable clinical and laboratory diagnostic techniques . . . [and] consistent with other substantial evidence in the record[,]'" *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004), *quoting Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), nor did she determine the proper weight to give them (if not controlling weight) by analyzing the factors set forth in 20 C.F.R. § 416.927. *Id.* ("Even if a treating physician's opinion is not entitled to controlling weight, '[t]reating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in [§] [416.927].'"), *quoting Watkins*, 350 F.3d at 1300.[3]

---

[3] The pertinent factors are: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii) the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion

Second, the ALJ did discuss Dr. Khetpal's limitations with regard to lifting, standing, walking, and sitting, but she failed to address some of the other restrictions he imposed on the claimant or why she chose to reject them, *e. g.*, the claimant was limited in pushing and/or pulling with hand/or foot controls, needed to lie down during the day to manage pain or other symptoms, and could never climb, stoop, kneel, crouch or crawl. It was error for the ALJ to "pick and choose" between Dr. Khetpal's findings on the medical source statement without any explanation. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-86 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted]. The ALJ should have instead discussed the evidence supporting her decision and explained her rejection of the evidence that did not. *See*, *e. g.*, *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."), *citing Vincent ex rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984). *See also Threet*

---

is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *Watkins,* 350 F.3d at 1300-01 [quotation marks omitted], *citing Drapeau v. Massanari,* 255 F.3d 1211, 1213 (10th Cir. 2001).

*v. Barnhart*, 353 F.3d 1185, 1190 (10th Cir. 2003) (remanding "for the ALJ to articulate specific findings and his reasons for ignoring . . . evidence.").

Finally, the ALJ appears to have assigned more weight to the non-examining agency physicians' opinions than those of Dr. Khetpal, *i. e.*, the ALJ agreed with the non-examining physicians' assessments that the claimant could perform sedentary work. To the extent the ALJ adopted some of their findings over those of Dr. Khetpal, she should have explained why she preferred the opinions of non-examining agency physicians over that of the claimant's treating physician. *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) ("The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. Thus, the ALJ erred in rejecting the treating-physician opinion of Dr. Baca in favor of the non-examining, consulting-physician opinion of Dr. Walker absent a legally sufficient explanation for doing so."), *citing* 20 C.F.R. §§ 404.1527(d)(1), (2), 416.927(1), (2) and Soc. Sec. Rul. 96-6p, 1996 WL 374180, at *2. In this case, the ALJ's reliance on the non-examining physicians' opinions was particularly problematic because they rendered their opinions in April 2005 and November 2005, which was over a year before Dr. Khetpal completed the medical source statement in December 2006.

Accordingly, the decision of the Commissioner must be reversed and the case remanded to the ALJ for further analysis of Dr. Khetpal's opinions. If the ALJ subsequently determines that additional limitations should be included in the claimant's RFC, she should

then redetermine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

As set forth above, the Court finds that correct legal standards were not applied by the ALJ and the decision of the Commissioner is therefore not supported by substantial evidence. Accordingly, the decision of the Commissioner is hereby REVERSED and the case REMANDED for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED** this 13th day of March, 2009.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**